IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KYTCH, INC.,

                   *Plaintiff*,

    v.

MCDONALD'S CORPORATION,

                   *Defendant*.

C.A. No. 22-279-MN

## PLAINTIFF KYTCH, INC'S OPPOSITION TO MCDONALD'S MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE STATEMENT

FARNAN LLP

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

IRELL & MANELLA LLP

Jason Sheasby
1800 Avenue of the Stars Suite 900
Los Angeles, CA 90067
(310) 277-1010
jsheasby@irell.com

CLARE LOCKE LLP

Elizabeth M. Locke, P.C.
Daniel P. Watkins
10 Prince Street
Alexandria, VA 22314
(202) 628-7407
libby@clarelocke.com
daniel@clarelocke.com

*Attorneys for Plaintiff Kytch, Inc.*

Dated: May 27, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................ 1

NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

SUMMARY OF ARGUMENT ........................................................................................ 2

STATEMENT OF FACTS ............................................................................................... 3

      A.    McDonald's and Taylor Reap Millions from Faulty Soft-Serve Machines—But Kytch Develops a Solution That Threatens Their Lucrative Scheme.................... 3

      B.    Following the Success of the Kytch Solution, McDonald's and Taylor Infiltrate Kytch's Product Trial to Misappropriate Kytch's Confidential Information. ........ 4

      C.    McDonald's Publishes False Promotional Ads to Promote Its "Open Kitchen" Product and Disparage the Kytch Solution—and Destroys Kytch's Business. ...... 5

      D.    In Related Litigation, Taylor and McDonald's Denied Ever Analyzing Kytch Devices, Providing Further Evidence Their Safety Claims Are Demonstrably False. .......................................................................................................... 6

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT ................................................................................................................... 7

I.    Kytch Properly Pleads Its Lanham Act False Advertising Claim....................................... 7

      A.    McDonald's False Promotional Ads Endorsing Open Kitchen Are Commercial Speech (Third Circuit Law; *Gordon & Breach* Factor 1)........................................ 8

      B.    McDonald's False Promotional Ad Concerned McDonald's Open Kitchen Product (*Gordon & Breach* Factor 3). .................................................................. 12

II.    Kytch Sufficiently Pleads Its Trade Libel Claim. ............................................................. 12

III.    Kytch Sufficiently Pleads Its California False Advertising Law ("FAL") and Unfair Competition Law ("UCL") Claims............................................................................ 14

      A.    Kytch Sufficiently Pleads Its FAL (Section 17500) Claim. ................................. 14

      B.    Kytch Sufficiently Pleads Its UCL (Section 17200) Claim. ................................. 15

      C.    McDonald's FAL and UCL Arguments Lack Merit............................................ 16

IV.    Kytch Properly Pleads Its Tortious Interference With Contract Claim. ........................... 18

V.      Kytch Properly Pleads Its Intentional and Negligent Interference With Business Expectancy Claims...................................................................................... 19

CONCLUSION............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AECOM Energy & Constr., Inc. v. Ripley*,
  2019 WL 316631 (C.D. Cal. Jan. 24, 2019) ............................................................. 14

*Albillo v. Intermodal Container Servs., Inc.*,
  114 Cal. App. 4th 190 (2003) ................................................................................ 15

*Allergan U.S. v. Imprimis Pharms., Inc.*,
  2017 WL 10526121 (C.D. Cal. Nov. 14, 2017) ....................................................... 17

*Alston v. Parker*,
  363 F.3d 229 (3d Cir. 2004) ................................................................................... 20

*Ariix, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) ................................................................................ 11

*Athena Feminine Techs. Inc. v. Wilkes*,
  2011 WL 4079927 (N.D. Cal. Sept. 13, 2011) ........................................................ 19

*Bailey v. Rite Aid Corp.*,
  338 F.R.D. 390 (N.D. Cal. 2021) ............................................................................ 14

*Biakanja v. Irving*,
  49 Cal. 2d 647 (1958) ............................................................................................ 20

*Bocobo v. Radiology Consultants of S. Jersey, P.A.*,
  477 F. App'x 890 (3d Cir. 2012) ............................................................................ 13

*Bolger v. Youngs Drug Prod. Corp.*,
  463 U.S. 60 (1983)........................................................................................... 10, 11

*BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.*,
  229 F.3d 254 (3d Cir. 2000) ................................................................................... 17

*Castrol Inc. v. Pennzoil Co.*,
  987 F.2d 939 (3d Cir. 1993) ..................................................................................... 7

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................................................................... 16

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
  398 F. Supp. 3d 623 (N.D. Cal. 2019) .................................................................... 15

*Cornette v. Graver*,
  473 F. Supp. 3d 437 (W.D. Pa. 2020)..................................................................... 11

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
    2016 WL 5118530 (S.D. Cal. Sept. 21, 2016) ........................................................ 13

*Deston Therapeutics LLC v. Trigen Lab'ys Inc.*,
    723 F. Supp. 2d 665 (D. Del. 2010) .................................................................... 9, 10

*Facenda v. NFL Films, Inc.*,
    542 F.3d 1007 (3d Cir. 2008) ............................................................................ 8, 11

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (2d Cir. 2002) ................................................................................. 9, 10

*First Health Grp. Corp. v. BCE Emergis Corp.*,
    269 F.3d 800 (7th Cir. 2001) .............................................................................. 8, 10

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.*,
    2009 WL 2462505 (E.D. Cal. Aug. 11, 2009) ...................................................... 13

*Glob. Res. Mgmt. Consultancy, Inc. v. Geodigital Int'l Corp.*,
    2016 WL 1065796 (C.D. Cal. Mar. 17, 2016) ...................................................... 13

*Gordon & Breach Sci. Publ'ns S.A. v. Am. Inst. of Physics*,
    859 F. Supp. 1521 (S.D.N.Y. 1994) ...................................................................... 7

*Greater Phila. Chamber of Com. v. City of Phila.*,
    949 F.3d 116 (3d Cir. 2020) ................................................................................... 8

*Groupe SEB USA, Inc. v. Euro-Pro Operating, LLC*,
    774 F.3d 192 (3d Cir. 2014) ................................................................................ 7, 9

*Grudt v. City of L.A.*,
    2 Cal. 3d 575 (1970) ............................................................................................ 19

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
    700 F. App'x 251 (4th Cir. 2017) .................................................................... 10, 11

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ......................................................................................... 16

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
    892 F.3d 719 (5th Cir. 2018) ............................................................................... 11

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
    882 F.2d 797 (3d Cir. 1989) ................................................................................ 17

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020) ......................................................................................... 18

*Jenni Rivera Enter., LLC v. Latin World Ent. Holdings, Inc.*,
   36 Cal. App. 5th 766 (2019) ........................................................................ 19

*Jordan v. Jewel Food Stores, Inc.*,
   743 F.3d 509 (7th Cir. 2014) ....................................................................... 11

*Kanarek v. Bugliosi*,
   108 Cal. App. 3d 327 (1980) ........................................................................ 13

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ................................................................................ 14

*Kytch v. Taylor*,
   No. RG21099155 (Cal. Sup. Ct. filed May 10, 2021) .................................... 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ...................................................................................... 8

*Lona's Lil Eats, LLC v. DoorDash, Inc.*,
   2021 WL 151978 (N.D. Cal. Jan. 18, 2021) ................................................. 17

*MAP Co. v. Lebanese Arak Corp.*,
   2018 WL 3357474 (C.D. Cal. Feb. 5, 2018) ................................................. 15

*Porous Media Corp. v. Pall Corp.*,
   173 F.3d 1109 (8th Cir. 1999) ..................................................................... 10

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) .......................................................... 14, 16, 17

*Retzlaff v. Horace Mann Ins.*,
   738 F. Supp. 2d 564 (D. Del. 2010) ............................................................... 6

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014) ......................................................................... 10

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*,
   552 F. Supp. 3d 901 (N.D. Cal. 2021) ......................................................... 17

*Self Directed Placement Corp. v. Control Data Corp.*,
   908 F.2d 462 (9th Cir. 1990) ......................................................................... 6

*SKWS Enters., Inc. v. Levonchuck*,
   2018 WL 11351584 (C.D. Cal. Apr. 2, 2018) ............................................... 14

*Spencer ex rel. Est. of Tate v. Eckman*,
   2005 WL 711511 (E.D. Pa. Mar. 28, 2005) .................................................. 19

*Synopsys, Inc. v. Magma Design Automation*,
  2006 WL 1452803 (D. Del. May 25, 2006) .............................................. 6

*Synygy, Inc. v. Scott-Levin, Inc.*,
  51 F. Supp. 2d 570 (E.D. Pa. 1999) .................................................. 7, 8

*Ticconi v. Blue Shield of Cal. Life & Health Ins. Co.*,
  160 Cal. App. 4th 528 (2008) ......................................................... 15

*Twitch Interactive, Inc. v. Johnston*,
  2019 WL 3387977 (N.D. Cal. July 26, 2019) ...................................... 18

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*,
  898 F.2d 914 (3d Cir. 1990) ............................................................ 8

*United States ex rel. Bookwalter v. UPMC*,
  946 F.3d 162 (3d Cir. 2019) ............................................................ 6

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
  673 F. Supp. 2d 1073 (E.D. Cal. 2009) ............................................ 16

*Wershba v. Apple Comp., Inc.*,
  91 Cal. App. 4th 224 (2001) ........................................................... 14

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ......................................................... 15

*Winchester Mystery House, LLC v. Global Asylum, Inc.*,
  210 Cal. App. 4th 579 (2012) ......................................................... 19

*Zeiger v. WellPet LLC*,
  526 F. Supp. 3d 652 (N.D. Cal. 2021) .............................................. 17

**Statutes**

18 U.S.C. §1832 .......................................................................... 20

Cal. Bus. & Prof. Code §17200 ....................................................... 14

Cal. Bus. & Prof. Code §17205 ....................................................... 18

Cal. Bus. & Prof. Code §17500 ....................................................... 14

Cal. Penal Code §499c .................................................................. 20

**Other Authorities**

Fed. R. Civ. P. 12 ........................................................................ 7

Fed. R. Civ. P. 9 .......................................................................................................................... 11

**Rules**

*Black's Law Dict.* (11th ed. 2019) ............................................................................................. 9

## INTRODUCTION

This case arises from McDonald's brazen and anticompetitive efforts to drive a start-up company out of business through a deceptive and false advertising campaign.  In its 133-page Complaint, Kytch pleads in great detail how it developed a revolutionary product—the Kytch Solution—to fix McDonald's notoriously unreliable soft-serve machines, how McDonald's worked with business partner Taylor Company to infiltrate Kytch's confidential product trial, inducing breaches of Kytch's non-disclosure agreements to misappropriate Kytch's proprietary technologies, and how McDonald's published False Promotional Ads disparaging Kytch's product to drive it from the market—while simultaneously promoting McDonald's own "Open Kitchen" product that it developed by exploiting Kytch's misappropriated technologies.

Kytch now seeks to hold McDonald's accountable for its leading role in unlawfully disparaging Kytch's product to Kytch's customers and forcing Kytch from the market. McDonald's actions—pled in detail in Kytch's Complaint—plainly amount to false advertising, unfair competition, tortious interference with contracts and business expectancies, and trade libel under well-settled law.  Simply put, McDonald's Motion to Dismiss provides no valid reason to dismiss *any* of Kytch's claims.  Rather, McDonald's motion repeatedly ignores (or improperly attempts to contradict on a Rule 12(b)(6) motion) Kytch's well-pled facts and McDonald's own admissions that plainly support Kytch's claims.  And McDonald's repeatedly misstates the governing law, including by arguing for inapplicable heightened pleading standards and manufacturing elements of claims that do not exist.  The Court should reject McDonald's efforts and deny McDonald's Motion in its entirety.

## NATURE AND STAGE OF PROCEEDINGS

Kytch asserts seven claims against McDonald's based on its scheme to induce Kytch's customers to breach non-disclosure agreements and to drive Kytch out of business through false

advertising, unfair competition, and tortious interference with Kytch's business expectancies. McDonald's has moved to dismiss under Rule 12(b)(6) and 12(e).

## SUMMARY OF ARGUMENT

1.     McDonald's does not dispute that Kytch pled all elements of its Lanham Act claim; it argues only that its Ads were not "commercial speech" and did not concern McDonald's product. But McDonald's Promotional Ads expressly identified its Open Kitchen product (which McDonald's admits it developed) and promotes it while simultaneously disparaging the Kytch Solution.  That is commercial speech.

2.     California's false advertising and unfair competition laws are "substantially congruent" with the Lanham Act, and Kytch states claims under those laws just as it does under the Lanham Act.  Kytch pleads that McDonald's Promotional Ads are false advertising, which itself constitutes both an "unlawful" and "unfair" business practice.  McDonald's misstates the law in asserting that Kytch (a _competitor_-plaintiff, not a _consumer_-plaintiff) must have "personally relied" on McDonald's false statements and has not pled entitlement to equitable relief.

3.     McDonald's does not dispute that its statements about the Kytch Solution constitute trade libel; it contends only that Kytch failed to plead special damages.  But McDonald's materially misstates the law governing special damages; Kytch more than pled its damages with particularity.

4.     Kytch pled facts establishing every element of its tortious interference with contract claim; McDonald's motion simply ignores those well-pled facts.

5.     Kytch pled facts establishing every element of its intentional and negligent interference with business expectancy claims.  McDonald's motion simply ignores those well-pled facts and attempts to manufacture a "special relationship" requirement that does not exist.

## STATEMENT OF FACTS

**A.    McDonald's and Taylor Reap Millions from Faulty Soft-Serve Machines—but Kytch Develops a Solution That Threatens Their Lucrative Scheme.**

Most McDonald's restaurants in North America are equipped with Taylor Model C602 soft-serve machines, which are "notorious for constantly breaking down," as even McDonald's has openly acknowledged. (Compl. ¶¶1-2, 52-63.) And they are designed so that when they break, only "Taylor-certified technicians" can fix them. (*Id.* ¶¶74-75.) This costs McDonald's franchisees thousands of dollars but is lucrative for Taylor and McDonald's:  McDonald's provides Taylor a monopoly selling the machines to McDonald's, Taylor earns millions selling and repairing them (at high cost to McDonald's franchisees but no cost to McDonald's), and Taylor "develops new commercial kitchen products exclusively for McDonald's" use and benefit.  (*Id.* ¶¶3-5, 36, 258.)

And, although not required to do so, Kytch has alleged McDonald's motive for perpetuating Taylor's repair racket. As the Complaint explains, McDonald's provides Taylor with the equipment monopoly (which obliges franchisees to buy products and services from Taylor) in exchange for Taylor's provision of exclusive technology-development services to McDonald's. (*Id.* ¶5.) Accordingly, the perpetuation of this arrangement—in which the franchisees effectively pay for McDonald's research and development—benefits McDonald's financially.

Kytch threatened to disrupt that lucrative scheme.  (*Id.* ¶¶7, 33-39, 66-83.)  After rigorous safety and reliability testing and safety certification by an independent laboratory, Kytch launched its Kytch Solution in Spring 2019 as a confidential product trial with McDonald's franchisees.  (*Id.* ¶¶35, 84-101.) It was an overnight sensation: it improved soft-serve machine performance, increased uptimes by preventing errors before they occurred, enhanced safety by flagging cleaning and heating cycles, and enabled remote monitoring and control—all while protecting users through incorporated safety mechanisms, including a non-overridable interlock that prevents operation

when a machine's front panel is removed and a user can access its interior.  (*Id.* ¶¶37, 84-101.)
Kytch quickly became the largest independent connectivity software vendor for McDonald's soft-serve machines, served franchisees in thirty states, and was heralded in the media and endorsed by the largest association of independent McDonald's owners.  (*Id.* ¶¶37-38, 137-40, 183-89.)

**B.**    **Following the Success of the Kytch Solution, McDonald's and Taylor Infiltrate Kytch's Product Trial to Misappropriate Kytch's Confidential Information.**

The Kytch Solution's success posed a direct threat to McDonald's and Taylor's lucrative repair racket—so they took action.  (*Id.* ¶¶11, 144-45.)  McDonald's and Taylor had tried—and failed—for years to develop their own technology to modernize their machines.  (*Id.* ¶¶9, 117-18.) When Kytch did what they could not, they misappropriated Kytch's technology.  (*Id.* ¶¶144-56.)

Kytch at all times maintained strict controls over access to its Kytch Solution because its key strategic advantages lie in its proprietary information.  (*Id.* ¶¶102-15.)  Kytch only made the Kytch Solution available to Kytch Trial participants and only subject to the Kytch Trial Agreement ("KTA") and incorporated Terms of Service ("ToS") that contained strict confidentiality, non-disclosure, and non-compete clauses.  (*Id.* ¶¶102-15.)  The KTAs provide that "each customer [i]s obligated and agree[s] to keep the information and devices Kytch provided confidential, ... use it only in furtherance of the Kytch Trial," and "expressly forbid[] 'displaying ... or making the Kytch Products available to ... any third party.'" (*Id.* ¶¶105-11.)

McDonald's knew this but was undeterred.  After Taylor unsuccessfully tried to acquire a Kytch Solution (it was blocked by Kytch) (*id.* ¶¶116-30), McDonald's "senior leadership" and Taylor scheduled a call with independent McDonald's franchisees Tyler Gamble and Eric Wilson to discuss "Kytch, and Options for Data Collection for McDonald's Equipment." (*Id.* ¶144.) McDonald's and Taylor "direct[ed] ... Gamble ... to infiltrate the Kytch Trial and to obtain Kytch's proprietary insights and confidential information" and "share these insights and Kytch confidential

information with McDonald's [and] Taylor ... so they could copy [them]." (*Id.* ¶¶146-47.)

McDonald's plan worked. Gamble enrolled in the Kytch Trial, entered into a KTA, and then, at McDonald's inducement and direction, breached it. (*Id.* ¶¶157-82.) At McDonald's urging, Gamble shared Kytch's confidential technologies with McDonald's senior leadership on multiple occasions over the course of months—including on a June 23, 2020 Zoom video-conference with McDonald's Director of Global Equipment Development Mike Zagorski and McDonald's Director of Global Strategic Sourcing John Sulit during which they viewed password-protected portions of the Kytch Solution's online interface ***that displayed Kytch's ToS***. (*Id.* ¶¶161, 168-82.) McDonald's and Taylor then used Kytch's confidential technologies to co-create their own product: the "Taylor Shake Sundae Connectivity" (now called "Open Kitchen"). (*Id.* ¶¶206-07, 225-37.)

### C. McDonald's Publishes False Promotional Ads to Promote Its "Open Kitchen" Product and Disparage the Kytch Solution—and Destroys Kytch's Business.

At the same time McDonald's was misappropriating Kytch's technologies, it led a false advertising campaign to drive Kytch out of business. (*Id.* ¶¶191-224.) The campaign's centerpieces were two False Promotional Ads touting Open Kitchen and disparaging the Kytch Solution. (Compl. ¶¶206-07; D.I. 11-1, Ex. 1.) As relevant here, the Ads: (1) publicly boasted that ***McDonald's developed*** the "Taylor Shake Sundae Connectivity" ("Open Kitchen") in partnership with Taylor; and (2) made numerous false statements about the Kytch Solution, including that "McDonald's has [] determined that the Kytch device creates a potential very serious safety risk" and can "cause serious human injury," and that it causes problems and "equipment reliability issues" with the soft-serve machines it is designed to fix. (*Id.*) But McDonald's made no such determination, its statements about the Kytch Solution are false, and McDonald's knew it. (Compl. ¶¶208-18, 251-60.) Nevertheless, McDonald's Ads had their intended effect: because of the Ads, "Kytch's customers started returning Kytch Solutions immediately" and Kytch "lost nearly all its

customers" and 94% of its corporate value.  (*Id.* ¶¶30, 270, 274, 311-12.)

> **D.**    **In Related Litigation, Taylor and McDonald's Denied Ever Analyzing Kytch Devices, Providing Further Evidence Their Safety Claims Are Demonstrably False.**

In May 2021, Kytch sued Taylor and Gamble (among others) in California state court, asserting trade secret misappropriation, tortious interference, and other claims for their roles in McDonald's scheme to infiltrate the Kytch Trial.  *See Kytch v. Taylor*, No. RG21099155 (Cal. Sup. Ct. filed May 10, 2021).  The court granted Kytch a TRO before issuing a preliminary injunction finding that Kytch demonstrated a likelihood of success proving that Gamble breached his KTA. *Id.* (TRO and Injunction Orders). Taylor and McDonald's opposed the preliminary injunction and represented to the court that they never possessed or "tested the Kytch Solution." (Compl. ¶22.) Thus, McDonald's representations about Kytch's safety were unfounded and baseless. After Taylor and McDonald's made these representations, Kytch filed this action.

## LEGAL STANDARD

Contrary to McDonald's suggestion, claims involving false statements of fact—like false advertising and unfair competition—do *not* necessarily sound in fraud and are *not* subject to the heightened pleading requirements of Rule 9 unless they are expressly based on fraud as opposed to other unlawful or unfair conduct.  *E.g.*, *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990) (Rule 8 applies to unfair competition claim); *Synopsys, Inc. v. Magma Design Automation*, 2006 WL 1452803, at *3 (D. Del. May 25, 2006) (Rule 8 applies to Lanham Act claims).  But Kytch's detailed complaint pleads plausible claims under any standard. *See United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (Rule 9(b) only requires plaintiff to plead "the who, what, when, where and how of the events at issue."). And motions for more definite statements are "rare[ly] granted." *Retzlaff v. Horace Mann Ins.*, 738 F. Supp. 2d 564, 569 (D. Del. 2010). To prevail, McDonald's must prove Kytch's Complaint is "so

vague or ambiguous" that it "cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

## ARGUMENT

## I.   Kytch Properly Pleads Its Lanham Act False Advertising Claim.

The Lanham Act is expansive: "Congress enacted section 43(a) of the Lanham Act to stop the kind of unfair competition that consists of lying about goods or services," *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 941 (3d Cir. 1993), and, as a remedial statute, it is broadly construed, *Thorn v. Reliance Van Co.*, 736 F.2d 929, 932 n.5 (3d Cir. 1984).  To state a Lanham Act false advertising claim, a plaintiff must plead that (1) the defendant made a false or misleading statement about its *or another's* product; (2) literal falsity *or* actual deception *or* a tendency to deceive; (3) material deception; (4) the product traveled in interstate commerce; and (5) likelihood of injury in terms of declining sales, loss of goodwill, *etc.  Groupe SEB USA, Inc. v. Euro-Pro Operating, LLC*, 774 F.3d 192, 198 (3d Cir. 2014).  **McDonald's does not contend that Kytch fails to sufficiently plead any of these elements—nor could it.**  (Compl. ¶¶191-250, 288-99.)

Rather, McDonald's asserts that its false statements are exempt from the Lanham Act because they were not made in "commercial advertising or promotion."  (MTD 6-11.) McDonald's asks this Court to adopt a test created (without citation) in *Gordon & Breach Sci. Publ'ns S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994), that asks if challenged statements were:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; ... (4) ... disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

(MTD 6-7.)[1] McDonald's contends that Kytch cannot satisfy Factors 1 and 3.  But that test has been partly rejected by the Supreme Court[2] and despite *some* citation by district courts within the

---

[1] McDonald's relies on *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 575 (E.D. Pa. 1999), which relies on a decision citing *Gordon & Breach*.

[2] The Supreme Court rejected the "competition" requirement in *Lexmark Int'l, Inc. v. Static*

Third Circuit, has not been adopted by the Third Circuit, which requires simply that the challenged statements be "commercial speech." *Facenda v. NFL Films, Inc.*, 542 F.3d 1007, 1015 (3d Cir. 2008); *see also First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001) (criticizing reliance on the test *Gordon & Breach* "originat[ed]"). Accordingly, the Court should decline McDonald's invitation and consider only whether McDonald's Ads are "commercial speech" at all. But, either way, Kytch sufficiently pleads its claim.

### A. McDonald's False Promotional Ads Endorsing Open Kitchen Are Commercial Speech (Third Circuit Law; *Gordon & Breach* Factor 1).

McDonald's argument that its False Promotional Ads are not commercial speech blinks reality. (MTD 9-11.) McDonald's does not even attempt to explain how those Ads, in which it promotes its own Open Kitchen product (see below) and disparages Kytch's product, are anything *other* than commercial speech. McDonald's does not contend that its Ads are political, ideological, religious, or artistic speech. Because of course they are not. They are commercial speech.

"Commercial speech" is "broadly defined as expression related to the economic interests of the speaker and its audience." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990). To determine if speech is commercial, courts ask: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech?" *Id.*; *Facenda*, 542 F.3d at 1017. "[A]ll three [factors] need not be present"; rather, "an affirmative answer to all three questions provides *'strong support'* for the conclusion that the speech is commercial." *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 137 (3d Cir. 2020). "Stated succinctly," determining if speech is commercial "rests heavily" on "commonsense." *U.S. Healthcare*, 898 F.2d at 933. All three factors—and commonsense—make clear that these False Promotional Ads are commercial speech.

---

*Control Components, Inc.*, 572 U.S. 118 (2014).

*First*, the False Promotional Ads are advertisements. They first identify and promote the benefits of McDonald's own product and then identify and disparage Kytch's competing product:

**Promotional Ad #1**

**Promotional Ad #2**

McDonald's identifies and touts benefits of its own product

McDonald's identifies and disparages Kytch's competing product

(Compl. ¶¶206-07; D.I. 11-1, Ex. 1.) And McDonald's distributed the Ads to over 13,000 actual and potential Kytch customers. (Compl. ¶4, 289.) That is the definition of advertising. *Black's Law Dict.: Advertising* (11th ed. 2019); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). In fact, it is the definition of *false* advertising. *Groupe*, 774 F.3d at 198.

McDonald's only response is to assert that its Ads are an "informational newsletter." (MTD 10.) But even if true (it is not), that is irrelevant. "Advertising is not limited to newspaper, television, or radio announcements." *Deston Therapeutics LLC v. Trigen Lab'ys Inc.*, 723 F. Supp. 2d 665, 674 (D. Del. 2010). "Advertising" is simply "a subset of persuasion and refers to dissemination of prefabricated promotional material"—*i.e.*, materials that are prewritten and

9

widely disseminated.  *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 804 (7th Cir.

2001); *Fashion Boutique*, 314 F.3d at 57. And courts regularly hold "informational literature" to

be advertisements. *E.g.*, *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66 (1983)

("informational pamphlets" are advertisements); *Handsome Brook Farm, LLC v. Humane Farm*

*Animal Care, Inc.*, 700 F. App'x 251, 258 (4th Cir. 2017) ("[C]orporation's informative literature"

is "commercial speech[.]"); *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1127 (8th Cir.

1999) (message warning of competing product's deficiencies is "commercial speech"); *Deston*,

723 F. Supp. 2d at 674 (product label).[3]

 **Second,** McDonald's concedes that the Ads specifically refer to its Taylor Shake Sundae

Connectivity ("Open Kitchen") and the Kytch Solution.  (MTD 10-11; Compl. ¶¶206-07.)

 **Third**, Kytch plausibly alleges McDonald's had an "economic motivation" for its

False Promotional Ads. Kytch pleads (and McDonald's own documents confirm) that McDonald's

is the co-creator of the "Taylor Shake Sundae Connectivity" product now known as

"Open Kitchen":

> We are pleased to share that **the McDonald's GSSS-Equipment Team**, in partnership with the NSLC Equipment Sub-Team, **has been working on** a strategic connectivity solution with Taylor for their Shake Sundae machine ... **[t]he Taylor Shake Sundae Connectivity (TSSC).** ...
>
> **McDonald's US Equipment Team**, in partnership with NSLC, **has been developing a strategic connectivity solution** with Taylor for their Shake Sundae machine ... **[t]he Taylor Shake Sundae Connectivity (TSSC)**.

(Compl. ¶¶206-07; D.I. 11-1, Ex. 1.)[4]  McDonald's Ads thus promote the sale of its own product.

That is direct economic motivation.

---

[3] McDonald's attaches to its motion a heavily-redacted copy of its "Field Brief" and asks the Court to consider *in camera* its redacted content. That is wholly improper. The Court cannot consider, on the pleadings, redacted materials not available to Kytch to adjudicate a disputed fact and construe it against the plaintiff. *Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014).
[4] Emphasis added unless otherwise noted.

McDonald's tries to dispute its connection to Open Kitchen, asserting Kytch only "vaguely refer[s] to it as a collective product of McDonald's and Taylor." (MTD 7-10.) But McDonald's ignores Kytch's well-pled facts and its dispositive admissions. (Compl. ¶¶206-07.)

Finally, McDonald's has many other obvious economic motivations for its Ads. Indeed, "for-profit compan[ies]" are generally "presumed to have primarily economic motivations for [their] speech," *Handsome Brook*, 700 F. App'x at 258, and "[e]conomic motivation is not limited to the expectation of a direct commercial transaction with consumers"; it can involve "indirect benefits" like "improvements to a brand's image, general exposure of a product, and protection of licensees' [*i.e.*, related parties'] interests." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021) (collecting cases); *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 519 (7th Cir. 2014) (promoting "brand awareness or loyalty" is economic motivation); *Handsome Brook*, 700 F. App'x at 258 (promoting brand reliability); *Facenda*, 542 F.3d at 1017 ("video game's general promotion of NFL-branded football" provides "indirect financial motivation" for NFL). McDonald's had many such economic motivations for its False Promotional Ads. As McDonald's admits, it "is in the business of selling ... franchises" (MTD 7), thus giving it a strong economic motive to tout its own product to fix its constantly-breaking soft-serve machines that frustrate franchisees (and could dissuade new ones). (Compl. ¶258.) McDonald's would also bolster its brand and earn goodwill by proactively developing a viable solution for its notoriously-unreliable machines. (*Id.*) Nothing more is required. *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730-31 (5th Cir. 2018) ("[W]hen discoverable information is in [defendant's] control," plaintiff need not plead it in its complaint.); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").[5]

---

[5] The two cases McDonald's cites in its argument to the contrary are entirely distinguishable. In

### B.  McDonald's False Promotional Ad Concerned McDonald's Open Kitchen Product (*Gordon & Breach* Factor 3).

McDonald's argument that its False Promotional Ads "did not concern [McDonald's] product" (MTD 7-9) impermissibly disputes Kytch's well-pled facts and McDonald's own admissions.  As explained above, Kytch pled that the "Taylor Shake Sundae Connectivity" product ("Open Kitchen") *is* McDonald's product.  (Compl. ¶¶206-07.)  And Kytch went further, pleading supporting facts that ***McDonald's has admitted*** that the ***"McDonald's US Equipment Team"*** and ***"McDonald's GSSS-Equipment Team" "develop[ed]"*** the "strategic connectivity solution" now known as ***Open Kitchen*** "*with* Taylor."  (*Id.*)  McDonald's documents confirm those facts.  (D.I. 11-1.)  And Kytch pleads facts showing that even if Open Kitchen were not McDonald's product, McDonald's *still* has economic interests in it.  (*See supra* Part I.A.)  Those well-pled facts are dispositive; McDonald's cannot dispute them at the pleadings stage.  *Russell*, 905 F.3d at 253.

Moreover, even if the jointly developed Open Kitchen were not McDonald's own product (it is), McDonald's concedes that its franchises are its products. (MTD at 7.) Those franchises include the Taylor equipment monopoly and therefore, at minimum, McDonald's was promoting its own franchises by advertising the Taylor products it includes within that offering.

## II.  Kytch Sufficiently Pleads Its Trade Libel Claim.

McDonald's does not attempt to argue that its statements that the Kytch Solution causes problems and "equipment reliability issues" with the soft-serve machines it is designed to fix, is unfit for use in smart kitchens, is unsafe, can "cause serious human injury," and creates "very serious safety risk[s]" are not libelous.  (MTD 19-20.)  McDonald's only argues that Kytch's trade libel claim fails because Kytch supposedly did not adequately plead special damages. McDonald's

---

*Bolger*, 463 U.S. at 66, the Supreme Court held that even "informational pamphlets" constitute commercial speech.  And *Cornette v. Graver*, 473 F. Supp. 3d 437, 461 (W.D. Pa. 2020), involved a wrestling commentator's clear "parody ... criticiz[ing] opinions that [he] disagreed with."

asserts that Kytch must "identify ... the exact amounts" of money and every "customer it lost" from McDonald's libel.  (*Id.*)  But McDonald's misstates the law and ignores Kytch's well-pled facts.

McDonald's vastly overstates the requirement of pleading special damages with particularity. While a "bare allegation" of pecuniary loss or just "referring to an amount to be ascertained at trial will not do," *G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, 2015 WL 12696203, at *4 (C.D. Cal. Sept. 15, 2015), *a plaintiff "does **not** need to plead a specific dollar amount*" under California law or Federal Rule 9, *Glob. Res. Mgmt. Consultancy, Inc. v. Geodigital Int'l Corp.*, 2016 WL 1065796, at *4 (C.D. Cal. Mar. 17, 2016).  Rather, a plaintiff may sufficiently plead special damages by *__either__* "identify[ing] the particular purchasers" and transactions that it lost *__or__* by "showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication." *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2016 WL 5118530, at *8 (S.D. Cal. Sept. 21, 2016). Mathematical precision is not required; special damages may be sufficiently alleged by "pleading [] a reduction in the number of new clients and a loss of clients," *Kanarek v. Bugliosi*, 108 Cal. App. 3d 327, 337 (1980), or "decreased market share" caused by the libel, *Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, 2009 WL 2462505, at *6 (E.D. Cal. Aug. 11, 2009); *Bocobo v. Radiology Consultants of S. Jersey, P.A.*, 477 F. App'x 890, 901 (3d Cir. 2012) ("general diminution of business").

Kytch properly pleads special damages in both ways.  Kytch pleads that its "customers started returning Kytch Solutions immediately" after McDonald's published its Ads *and* identified specific customers—including Brandon Mayers, Rikesh Patel, Michael Keenan, the Tom Locke group, and Rick Darmody—who specifically cited McDonald's Ad as the reason they did so. (Compl. ¶¶311-12.) Similarly, Kytch pleads that McDonald's libel cost it $10 million in Series A

funding.  (*Id.* ¶272.)  Kytch further pleads facts showing that at the time of McDonald's libel, it was an established business with sales doubling each quarter, a 93% customer retention rate, 425 monthly subscribers, and a $50 million valuation, but because of McDonald's libel, Kytch "lost nearly all its customers, cratering to just 83 renewing devices" and its market valuation fell to just $3 million—a 94% loss.  (*Id.* ¶30, 270, 274, 311-12.)  Kytch adequately pleads special damages.

## III.    Kytch Sufficiently Pleads Its California False Advertising Law ("FAL") and Unfair Competition Law ("UCL") Claims.

"California's consumer protection laws are among the strongest in the country."  *Wershba v. Apple Comp., Inc.*, 91 Cal. App. 4th 224, 242 (2001).  The FAL "prohibits 'untrue or misleading' statements in the course of business," and the UCL "prohibits 'any unlawful, unfair, or fraudulent business act or practice.'"  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (citing Cal. Bus. & Prof. Code §§17200, 17500).  Their "language is 'broad' and 'sweeping' to 'protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'"  *Id.* (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011)); *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 399 (N.D. Cal. 2021). Because they are "substantially congruent" with the Lanham Act, *AECOM Energy & Constr., Inc. v. Ripley*, 2019 WL 316631, at *7 (C.D. Cal. Jan. 24, 2019), a plaintiff who "state[s] a claim for false advertising under the Lanham Act [] also ... state[s] a claim under" the FAL and UCL, *SKWS Enters., Inc. v. Levonchuck*, 2018 WL 11351584, at *3-4 (C.D. Cal. Apr. 2, 2018). Thus, Kytch properly pleads its FAL and UCL claims; McDonald's smattering of contentions otherwise cannot change that conclusion.

### A.    Kytch Sufficiently Pleads Its FAL (Section 17500) Claim.

The FAL makes it unlawful for any person or entity "with intent directly or indirectly to dispose of" (*i.e.*, sell) property or services to make untrue or misleading statements in connection therewith. Cal. Bus. & Prof. Code §17500. To state a claim, a plaintiff need only plead

(1) dissemination of an untrue or misleading statement (2) that is known, or should be known, to be untrue or misleading, and (3) injury in fact. *MAP Co. v. Lebanese Arak Corp.*, 2018 WL 3357474, at *5 (C.D. Cal. Feb. 5, 2018). As explained above, Kytch has done exactly that. Kytch pled that McDonald's, in its Ads, made multiple false and misleading statements, including that the Kytch Solution causes problems and "equipment reliability issues" with the soft-serve machines it is designed to fix, is unfit for use in smart kitchens, is unsafe, can "cause serious human injury," and creates "very serious safety risk[s]." (Compl. ¶¶206-07, 291, 302.) McDonald's knew those statements are false and misleading, including because it knew about the Kytch Solution's safety mechanisms and certifications, witnessed its effective soft-serve machine operation and control, and made no contrary "determination." (*Id.* ¶¶174-79, 212-18, 251-60, 292, 304.) *See Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019) (false claim that competitor's product is "unsuitable or unsafe" is actionable under FAL and UCL). And Kytch suffered substantial injury: its business was devastated as a direct result. (Compl. ¶¶266-77, 305.)

**B.      Kytch Sufficiently Pleads Its UCL (Section 17200) Claim.**

To state a UCL claim, a plaintiff need only allege that the defendant engaged in a business act or practice that is "***either*** [1] unlawful (*i.e.*, is forbidden by law), [2] unfair (*i.e.*, harm to victim outweighs any benefit) ***or*** [3] fraudulent (*i.e.*, is likely to deceive ...)." *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206 (2003); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Kytch properly pleads both "unlawful" and "unfair" conduct.

Under the UCL's **unlawful prong**, a plaintiff can plead "anything that can properly be called a business practice and ... is forbidden by law." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717-18 (2001). "Virtually any law ... can serve as a predicate," *Ticconi v. Blue Shield of Cal. Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 539 (2008), and "violation of the false advertising law ... necessarily violates the [UCL]," *Williams v. Gerber Prod. Co.*, 552 F.3d

934, 938 (9th Cir. 2008), as does tortious interference, *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at \*11 (N.D. Cal. Mar. 23, 2011).  Kytch pleads violations of the Lanham Act, FAL, and that McDonald's engaged in tortious interference.  (*See* Parts I, III.A, IV-V.)

A business act or practice is **"unfair"** if it "'threatens an incipient violation of an antitrust law, _**or**_ violates the policy or spirit of one of those laws because its effects are comparable to a violation of the law, _**or**_ that otherwise significantly threatens or harms competition.'" *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1086-87 (E.D. Cal. 2009) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)).  Kytch pleads all three: that McDonald's violated antitrust law and the spirit of that law (in its Lanham Act claim) **and** that its misappropriation of Kytch's technology while simultaneously disparaging its product as "unsafe" threatened and harmed competition.  Because the Kytch Solution threatened to undermine McDonald's and Taylor's soft-serve machine monopoly, McDonald's disparaged the Kytch Solution "to protect Taylor's [soft-serve machine] repair racket" while promoting McDonald's own forthcoming Open Kitchen product.  (Compl. ¶¶19-20, 256-60.)

### C.    McDonald's FAL and UCL Arguments Lack Merit.

McDonald's final two arguments against Kytch's FAL and UCL claims lack merit.  ***First***, McDonald's contends that Kytch's claims fail because it "cannot allege that it *personally* relied on [McDonald's] false [Ad] to its detriment." (MTD 11-13.) But the California Supreme Court and Ninth Circuit do ***not*** require *competitor*-plaintiffs (as opposed to *consumer*-plaintiffs) to prove that reliance.  And that makes perfect sense: why would a competitor-plaintiff ever rely on a knowingly false ad about its own product? Instead, "[t]o state a claim under the UCL or the FAL 'based on false advertising or promotional practices, it is necessary ***only*** to show that members of the public are likely to be deceived.'" *Pulaski*, 802 F.3d at 985-86 (quoting *In re Tobacco II Cases*, 46 Cal.

4th 298, 312 (2009)). For a competitor-plaintiff to have standing, it need only plead economic injury resulting from the false advertising or unfair practice. *Kwikset*, 51 Cal. 4th at 322; *In re Tobacco II Cases*, 46 Cal. 4th at 320; *see also, e.g.*, *Lona's Lil Eats, LLC v. DoorDash, Inc.*, 2021 WL 151978, at *10 (N.D. Cal. Jan. 18, 2021) ("[N]on-consumer plaintiff can allege false advertising...without alleging its own reliance[.]"); *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901, 915 (N.D. Cal. 2021); *Allergan U.S. v. Imprimis Pharms., Inc.*, 2017 WL 10526121, at *13 (C.D. Cal. Nov. 14, 2017). "California has created … a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury[.]" *Pulaski*, 802 F.3d at 986. Kytch plainly pleads economic injury. (*See supra*.)

**Second**, McDonald's asserts that Kytch's claims fail because it "failed to plead a valid entitlement to [equitable] relief." (MTD 12-13.) But Kytch **has** pled that a remedy at law is inadequate: while monetary damages may compensate Kytch for lost subscriber fees and the like caused by McDonald's false Ad, "monetary damages for past harm are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at"; only equitable relief would "ensure that [Kytch] (and [] consumers) can rely on [McDonald's] representations in the future," *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021); *Moran v. Bondi Sands (USA) Inc.*, 2022 WL 1288984, at *6 (N.D. Cal. Apr. 29, 2022), and to prevent McDonald's from improperly using or disclosing its ill-obtained technology. That is precisely why Kytch seeks equitable relief. (Compl. at Prayer.) Moreover, Kytch is entitled to restitution from McDonald's for its ill-gotten gains from its false Ad, as Kytch has pled that false advertising caused it substantial losses of goodwill and harm to reputation—remedies for which the Third Circuit has squarely held money damages are inadequate. *E.g.*, *BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263 (3d Cir. 2000) ("injuries to reputation"); *Instant*

*Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 (3d Cir. 1989) (loss of goodwill); *see also Twitch Interactive, Inc. v. Johnston*, 2019 WL 3387977, at *12 (N.D. Cal. July 26, 2019); Cal. Bus. & Prof. Code §17205 (UCL remedies cumulative to those at law).

## IV.    Kytch Properly Pleads Its Tortious Interference With Contract Claim.

To state a claim for tortious interference with contract, a plaintiff need only plead (1) a valid contract; (2) defendant's knowledge thereof; (3) defendant's intentional acts to induce breach or disruption; (4) breach or disruption; and (5) damage. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020). Kytch pleads each element: (1) Kytch entered into contracts (KTAs)—with confidentiality and non-disclosure provisions—with Gamble and other identified Kytch Trial participants (Compl. ¶¶157, 279-80); (2) McDonald's knew of those contracts and had even reviewed their confidentiality and non-disclosure provisions (*id.* ¶¶14, 30, 144-52, 282); (3) McDonald's induced Gamble and others to breach the KTA by disclosing Kytch's confidential information and using it to develop Open Kitchen (*id.* ¶¶130-82, 283-85); (4) Gamble and others breached the KTA (*id.*); and (5) Kytch suffered damages therefrom. (*Id.* ¶¶266-77, 286-87).

In response, McDonald's simply asserts that Kytch failed to plead that it (or, specifically, any high-ranking McDonald's employee) knew about the KTAs. (MTD 16-17.) But McDonald's ignores Kytch's well-pled facts. Kytch not only pled that McDonald's had actual knowledge of the KTAs but also that McDonald's had reviewed their confidentiality and non-disclosure provisions "in the spring of 2020." (Compl. ¶¶33, 282.) And Kytch pled *how* McDonald's knew: "McDonald's ... tried to obtain the [Kytch] devices through Kytch, but [was] unwilling to sign binding NDA/non-compete agreements" (*id.* ¶22); McDonald's "[s]enior leadership" discussed with Taylor how "to infiltrate the Kytch Trial and obtain Kytch's proprietary and confidential information" on February 13, 2022 (*id.* ¶144-53); and McDonald's Director of Global Strategic Sourcing John Sulit and "McDonald's Director of Global Equipment, Mike Zagorski ... access[ed]

the password-protected portions of Kytch's online interface" that clearly displayed those confidentiality provisions during a June 23, 2020 Zoom video conference (*id.* ¶14, 173-80).[6]

## V.    Kytch Properly Pleads Its Intentional and Negligent Interference With Business Expectancy Claims.

To state an intentional or negligent interference with business expectancy claim, a plaintiff must plead (1) an economic relationship with a third party with likely future economic benefit; (2) defendant's knowledge of the relationship; (3) intentional or negligent acts to disrupt it; (4) disruption; and (5) economic harm. *Athena Feminine Techs. Inc. v. Wilkes*, 2011 WL 4079927, at *8 (N.D. Cal. Sept. 13, 2011). Kytch pleads each element: (1) Kytch had economic relationships with, and received ongoing and future economic benefits from, specifically-identified McDonald's franchise operators who purchased, used, and paid monthly subscription fees for Kytch (Compl. ¶¶210, 311-12, 328, 338); (2) McDonald's knew of those relationships (*id.* ¶¶329, 339); (3) McDonald's intentionally (or at least negligently)[7] disrupted them by falsely stating, among other things, that the Kytch Solution causes problems with the soft-serve machines it is designed to fix and may "cause serious human injury" (*id.* ¶¶307, 330-32, 340-43); (4) McDonald's in fact disrupted those relationships and caused numerous customers to "return[] Kytch Solutions" (*id.* ¶¶311-12, 334, 345); and (5) Kytch suffered economic harm as a result (*id.* ¶¶335, 346).

McDonald's cannot avoid these well-pled facts. ***First***, McDonald's repeats its argument that Kytch failed to plead economic relationships or McDonald's knowledge thereof. (MTD 17-

---

[6] Contrary to McDonald's suggestion that it needed to have complete knowledge of the text of the KTAs, the law is clear that "'[t]o recover damages for inducing a breach of contract, the plaintiff need not establish that the defendant had full knowledge of the contract's terms.'" *Jenni Rivera Enter., LLC v. Latin World Ent. Holdings, Inc.*, 36 Cal. App. 5th 766, 783 (2019). *Winchester Mystery House, LLC v. Global Asylum, Inc.*, 210 Cal. App. 4th 579 (2012), does not hold otherwise; it turned on the sufficiency of evidence demonstrating knowledge of a contract.

[7] Rule 8 allows and California law is "well settled" that a plaintiff may plead inconsistent intentional and negligent tort theories. *Spencer ex rel. Est. of Tate v. Eckman*, 2005 WL 711511, at *3 (E.D. Pa. Mar. 28, 2005); *Grudt v. City of L.A.*, 2 Cal. 3d 575, 586 (1970).

18.)  But Kytch pled in detail specifically-identified economic relationships with trial participants and McDonald's knowledge thereof.  (Compl. ¶¶210, 311-12, 328-29, 338-39; *supra* Part IV.)

*Second*, McDonald's conclusorily contends Kytch's *negligent* interference claim fails because Kytch failed to plead "an independently wrongful act" by McDonald's.  (MTD 18.)  But Kytch pled multiple such wrongful acts by McDonald's in interfering with Kytch's business expectancies, including conspiring to steal Kytch's trade secrets (Compl. ¶¶170-80; 18 U.S.C. §1832 (theft of trade secrets); Cal. Penal Code §499c(c) (same)); violating the Lanham Act, FAL, UCL, and California libel law (*see supra*); and threatening in bad-faith to wrongfully void the equipment warranties of franchisees using the Kytch Solution.  (Compl. ¶¶206-07, 330.)

*Third*, McDonald's asserts Kytch's negligent interference claim fails because Kytch must, but did not, plead a "special relationship" with McDonald's.  (MTD 18-19.)  Although McDonald's suggests Kytch must plead something akin to a relationship of trust, the caselaw on which it relies makes clear that a duty of care for negligence purposes arises based on:

> (1) the extent to which [an action] was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm.

*Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958) (relied on by McDonald's caselaw).  Kytch pleads that McDonald's disparaged Kytch to its current and potential customers to destroy its business and in fact destroyed Kytch's business.  (Compl. ¶¶210, 311-12, 266-77, 329-47.)  That is morally blameworthy action that must be redressed and prevented.  Nothing more is required.

## CONCLUSION

For the foregoing reasons, McDonald's motions should be denied.  In the alternative, if the Court is inclined to dismiss any claims, leave to amend them should be granted. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

DATED: May 27, 2022              Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

CLARE LOCKE LLP

Elizabeth M. Locke, P.C.
Daniel P. Watkins
10 Prince Street
Alexandria, VA 22314
(202) 628-7407
libby@clarelocke.com
daniel@clarelocke.com

IRELL & MANELLA LLP

Jason Sheasby
1800 Avenue of the Stars Suite 900
Los Angeles, CA 90067
(310) 277-1010
jsheasby@irell.com

*Attorneys for Plaintiff Kytch, Inc.*