Jason Sheasby SBN 205455
jsheasby@irell.com
IRELL & MANELLA
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4267
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Daniel P. Watkins (admitted *pro hac vice*)
daniel@mwpp.com
Amy McCann Roller (admitted *pro hac vice*)
amccannroller@mwpp.com
MEIER WATKINS PHILLIPS PUSCH
1629 K. Street NW, Suite 300
Washington, DC 20006
Telephone: (202) 318-3655

*Attorneys for Plaintiff Kytch, Inc.*

Catherine Y. Lui SBN 239648
clui@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St,
San Francisco, CA 94105
Telephone: (415) 773-5700
Facsimile: (415) 773 5759

Kristopher R. Wood SBN 284727
kristopher.wood@orrick.com
Catherine L. Malone SBN 325283
cmalone@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street Ste. 1100
Irvine, CA 92614
Telephone: (949) 567 6700
Facsimile: (949) 567-6710

*Attorneys for Defendant McDonald's Corp.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KYTCH, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>MCDONALD'S CORPORATION,<br><br>    Defendant. | No. 23-CV-01998-TSH |

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI. The Parties agree to meet and confer on any discovery disputes relevant to the matter, and either party may seek Court assistance to resolve any dispute.

3. **LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4. **PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) Only ESI created or received by custodians (to be agreed upon by the parties as stated below) between January 1, 2018 and the Present will be preserved;

b) ESI created before January 1, 2014 and December 31, 2017 will be preserved only upon a showing of good cause and the parties shall work in good faith to identify for such extended preservation obligations only those custodians and/or file repositories that are highly likely to contain relevant information;

c)  The parties have agreed to exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary;

d)  The parties will agree on the number of custodians per party for whom ESI will be preserved;

e)  These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will not be preserved, searched, reviewed, or produced:

1. backup systems and/or tapes used for disaster recovery;
2. systems, server and network logs; and
3. systems no longer in use that cannot be accessed.
4. deleted, slack, fragmented, or other data accessible only by forensics;
5. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
6. temporary internet files, history, and cache.

**5. SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery including, the identification of the custodial and noncustodial data sources containing potentially relevant ESI for potential collection, review and production.

**6. PRODUCTION FORMATS**

**A. Document Image Format**. Unless otherwise stated herein or agreed to by the parties, the parties agree to produce documents in the following manner: all documents shall be produced as color image files (JPG, PDF files or Group IV TIFFs), sequentially labeled and Bates stamped, except that images containing no color may be produced in black and white. Accompanying each image file shall

be a multipage text (TXT) file containing searchable text from the native file, and the metadata discussed later in this Order (paragraph 6.D, below). The parties are not obligated to populate manually any of the fields identified below if such fields cannot be extracted from a Document, with the exception of Custodian and Confidentiality, which shall be populated by the producing party. In the event of any discrepancy between the Confidentiality designation stamped on the image file and the Confidentiality designation provided in the Metadata, the higher designation shall control until the producing party corrects the discrepancy by providing either a corrected Metadata overlay or a new production image file.

**B. Native File Format**. For Excel spreadsheets, databases, or other Documents that cannot be converted to TIFF or JPEG format, ESI may be produced in Native data format, as the ESI exists on the producing party's computer system. For example, emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields. A single placeholder image should be provided containing the language "Produced in Native Format." The placeholder image should include the Bates number and confidentiality designation if applicable. Searchable text for the entire Document and Metadata must be provided as well where reasonably possible.

**C. Other Formats.** If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

**D. Metadata.** Parties shall produce native format documents with any metadata associated with such native files. For the avoidance of doubt, nothing in this paragraph prevents a party from producing processed native files. Where redacted native format documents are produced, the metadata associated with the original document shall be provided unless the metadata reveals the content of the redaction. Where non-native format data is produced, the Metadata fields identified below will be extracted and produced (to the extent available):

- Bates Start
- Bates Stop
- Beg Attach
- End Attach

- Beg Family
- End Family
- Parent ID
- Custodian or Custodians[1]
- File Name
- File Extension
- Email Subject
- To
- From
- CC
- BCC
- Date and Time Sent
- Date and Time Received
- File Created Date and Time
- File Author
- File Last Modified Date and Time
- MD5 Hash
- OCRPATH
- Link
- Confidentiality Designation
- Redacted

**E.   Duplicates.**  Each party is required to produce only a single copy of a responsive document and each party may deduplicate responsive ESI across custodians by removing exact duplicates only. A party may also de-duplicate email threads and attachments (i.e., files associated with an email for

---

[1] The Parties need not list custodians that do not appear on the agreed upon list, see Paragraph 4.c., above.

retention and storage as a single message unit), provided the most inclusive non-privileged responsive email in a thread will be produced and such deduplication will not exclude any attachments from emails in the rest of the thread that would otherwise be produced.

**F. Document Families.** The parties shall undertake reasonable efforts to preserve parent-child relationships within a document family (e.g., the association between an attachment and its parent document, or a document and any embedded documents). The child-document(s) should be consecutively produced immediately after the parent-document.

**G. Hyperlinked Files.** If a Receiving Party identifies a hyperlinked file that it reasonably believes to be responsive (by identifying the Bates number of the document within which the hyperlink is embedded) and seeks its identification or production, that Producing Party shall undertake reasonable efforts to locate the hyperlinked file and either identify by Bates number the hyperlinked document if already produced or collect the document if it still exists on the Producing Party's systems and produce it, if responsive, non-privileged, and to the extent not unduly burdensome (either individually or cumulatively).

**H. Production Media.** Documents shall be produced by sharefile or FTP link, unless otherwise agreed by the parties or required to effectuate the production.

**7. PHASING**

The parties will consider the need for phasing, should it arise.

**8. DOCUMENTS PROTECTED FROM DISCOVERY**

a)     Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection. Information that contains privileged matter or attorney work product shall be returned or destroyed immediately if such information appears on its face to have been inadvertently produced or if

requested.

b)  Pursuant to Fed. R. Civ. P. 26(b)(5), if information produced in discovery is subject to a claim of privilege or of work product protection, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, and destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

c)  Privileged and/or work product communications with trial counsel need not be placed on a privilege log. To the extent that communications with outside counsel retained in connection with any government investigation are responsive to a discovery request, they may be logged categorically, except that communications subject to a claim of common interest privilege shall be individually logged.  The foregoing is not intended as a waiver of any Party's rights, objections, and arguments related to the discoverability of communications related to such government investigation(s).

9. **MODIFICATION**

The parties acknowledge that there may be certain disputes concerning additional ESI-related issues that the parties were unable to completely resolve prior to preparing this Stipulated Order or which may arise after its entry and which this Stipulated Order does not address. Nothing in this Stipulated Order shall prohibit either party from presenting such disputes to the Court for resolution and neither party will argue that such dispute has already been resolved by virtue of the fact that it was omitted from this Stipulated Order.

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

10. **MISCELLANEOUS PROVISIONS**

a)  Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and

1 | economical exchange of electronic data or other covered discovery materials.

2 |     b) Should any Party subsequently determine in good faith that it cannot proceed as required by this order or that the order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: October 17, 2023

                **FOR PLAINTIFF KYTCH, INC.**

                /s/ Daniel P. Watkins
                DANIEL P. WATKINS
                MEIER WATKINS PHILLIPS PUSCH
                *Attorney for Plaintiff Kytch, Inc.*

                **FOR DEFENDANT MCDONALD'S CORP.**

                /s/ Kristopher R. Wood
                KRISTOPHER R. WOOD
                ORRICK HERRINGTON & SUTCLIFFE, LLP
                *Attorney for Defendant McDonald's Corp.*

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: _____

                THOMAS S. HIXSON
                UNITED STATES MAGISTRATE JUDGE