# EXHIBIT 1

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| **CLARE LOCKE LLP,** | |
| Claimant, | |
| v. | Case No. 01-24-0002-9516 |
| **KYTCH, INC.,** | |
| Respondent. | |

## DECISION AND ORDER ON CLAIMANT'S REQUEST FOR EMERGENCY INJUNCTIVE RELIEF

Claimant Clare Locke LLP ("Claimant" or "Clare Locke") has filed an application for emergency relief pursuant to Rule 38(e) of the American Arbitration Association ("AAA") Commercial Arbitration Rules and Mediation Procedures. Clare Locke seeks an interim order or award preliminarily enjoining Respondent Kytch, Inc. ("Kytch" or "Respondent") and its officers, agents, servants, employees, attorneys, and other persons in active concert or participation with them from dismissing Kytch's claims, and/or dispersing, encumbering, and/or dissipating any settlement funds received in *Kytch, Inc. v. Gamble*, No. RG21099155 (Sup. Ct. Alameda Cnty., Cal.) (the "Alameda County Action"); *Kytch v. Taylor Commercial Foodservice, LLC*, No. 22-606 (D. Del.) (the "Delaware Action"); *Kytch v. Taylor Commercial Foodservice, LLC*, No. 23-1810 (3d Cir.); and *Kytch v. McDonald's Corp.*, No. 3:23-cv-01998-TSH (N.D. Cal.) (the "Northern District of California Action") (collectively, the "Kytch Litigation"), until Clare Locke's attorneys' liens and related claims have been resolved.

In support of its application for emergency injunctive relief, Claimant filed a brief entitled Claimant Clare Locke's Request for Appointment of Emergency Arbitrator and

1

for Emergency Injunctive Relief, dated March 25, 2024, the Declaration of C. Bryan Wilson, dated March 25, 2024, the Declaration of Elizabeth M. Locke, dated March 25, 2024, and multiple exhibits, including engagement letters, invoices, and correspondence with Daniel P. Watkins, counsel for Respondent. Claimant asserts multiple claims for relief against Respondent and claims it invoiced for services performed in the amount of $7,194,598.92. Claimant asserts its entitlement to attorneys' fees is at risk as Respondent may settle the Kytch Litigation and disburse all the proceeds without paying any of Claimant's fees. Claimant submitted that it has given notice of its attorneys' liens against Kytch's claims in the Kytch Litigation pursuant to Virginia Code § 54.1-3932, the Virginia attorneys' lien statute.

The AAA appointed me as Emergency Arbitrator on March 25, 2024. A conference was scheduled for March 27, 2024 to hear from the parties and discuss a schedule for consideration of the application for emergency relief.

On March 27, 2024, shortly before the conference, counsel for Respondent notified me, the AAA and Claimant that Respondent had elected to avail itself of the California State Bar's statutory dispute resolution procedures for attorney's fees disputes, and that its request automatically stayed any earlier filed proceeding, including this arbitration, pursuant to Cal. Bus. & Prof. Code §6201(b) and Cal. State Bar. R. 3.511. Respondent submitted a copy of its request to the California State Bar, but did not submit any other papers in opposition to Claimant's application for emergency relief.

At the conference on March 27, 2024, I offered the parties an opportunity to raise issues and/or submit argument regarding Claimant's application for emergency relief. Counsel for Claimant reiterated its request for emergency relief, argued that it had shown

2

a likelihood of success on the merits and irreparable harm, and stated Claimant's belief that it was not subject to the California statutory dispute resolution procedures for attorneys' fees disputes as its attorneys are not licensed in California, Claimant does not have an office in California, it provided services in Virginia and agreed to arbitrate with the AAA.

In response, counsel for Respondent stated that Respondent objected to the jurisdiction of the AAA and that the arbitration was in any event stayed by Respondent's filing of a request for statutory arbitration of the fee dispute in California. Counsel for Respondent then stated that he would drop off the call and abruptly hung up as I was beginning to ask him questions.[1]

Subsequent to the March 27 conference call, I scheduled a hearing on Claimant's application for April 2, 2024, and gave the parties an opportunity to submit papers in further support or opposition to Claimant's application for emergency relief by March 29, 2024.

On March 29, 2024, Claimant filed papers in further support of its application. It submitted a Supplemental Brief, the second Declaration of C. Bryan Wilson, the second Declaration of Elizabeth Lock and additional exhibits. In those papers, Claimant argued that the AAA and the Emergency Arbitrator have jurisdiction, the California arbitration statute is preempted, does not apply and cannot not stay this arbitration, and reiterated its request for emergency relief to avoid irreparable harm. Respondent did not submit any papers by the deadline. Instead, shortly before the hearing on April 2, 2024, counsel

---

[1] Claimant argues that Respondent's counsel's behavior warrants a finding of contempt and/or sanctions. I disagree. Counsel dropped off the call after articulating his objections and it is unclear that counsel was deliberately ignoring follow up questions. Furthermore, counsel for Respondent fully participated in the April 2 hearing and answered all questions.

3

for Respondent sent a letter to Claimant's counsel, with a copy to the AAA, asserting that Claimant was not facing any irreparable harm and there was no need for emergency relief because Respondent agreed to Claimant's March 21 proposal to resolve the Claimant's request for emergency relief by agreeing to a limited period of time to review and discuss the settlement agreements regarding the Kytch Litigation (the "Settlement Documents") and negotiate an amicable resolution. Respondent further advised Claimant that it should withdraw its application for emergency relief because the arbitration was stayed by its request for mandatory alternative fee dispute resolution in California as the lion's share of the work performed by Claimant was done in California.

On April 2, 2024, I conducted a telephonic hearing to consider Claimant's application for emergency relief. Counsel for the parties appeared at the hearing. Claimant reiterated its request for relief and argued Respondent would not be prejudiced by an injunction insofar as it had agreed to temporarily freeze settlement funds. Respondent reiterated its objections to jurisdiction and regarding a stay of the arbitration and reserved rights. Respondent also agreed to consider a stipulated order agreeing to a temporary freeze of settlement funds. Although the record reflects that there were some discussions between the parties regarding a potential agreement to resolve the Claimant's request for emergency relief by agreeing to a limited period of time to review and discuss the Settlement Documents and negotiate an amicable resolution, the parties did not reach agreement. Respondent suggested that Claimant's had placed a cloud on the settlement of the Kytch Litigation by sending letters to defense counsel and an injunction could threaten the settlements, but Respondent did not submit the correspondence, disclose the

status or terms of the settlements or provide any sworn testimony in support of its argument.

Having considered the papers submitted in support of Claimant's request for emergency relief, the submission from Respondent concerning its request for statutory fee arbitration in California, and the argument of counsel for the parties, I grant Claimant's application for emergency relief in part and deny it in part. Before addressing the merits, I will address Respondent's objections.

First, with regard to jurisdiction, under Commercial Rule 38(d), an emergency arbitrator has the authority to rule on his or her jurisdiction. Respondent has stated an objection to my jurisdiction. However, Respondent has not explained the basis for its objection or cited to any facts or legal authority in support of its objection. Nor does Respondent assert that it was not properly served with notice of these arbitration proceedings or Claimant's request for emergency relief. Claimant argues that the AAA has jurisdiction over both this arbitration and this emergency request. It points to the parties' engagement letters wherein Kytch agreed to arbitrate disputes of this nature with Clare Locke on three separate occasions, on November 6, 2020 (Exhibit M),[2] April 28, 2021 (Exhibit N), and November 29, 2021 (Exhibit O). The operative agreement between Clare Locke and Kytch requires that "[a]ny controversy or claim arising out of or relating to [that] agreement or [Clare Locke's] representation of [Kytch] . . . shall be settled by arbitration in Virginia administered by the American Arbitration Association." Ex. O (Nov. 2021 Engagement Agreement) at 6. Claimant argues that all of its claims, including this emergency application, directly arise from Clare Locke's representation of Kytch memorialized in that agreement, including the financial terms of the

---

[2] Exhibits references are to the exhibits attached to Claimant's submissions.

representation that Clare Locke seeks to enforce. Claimant points out that the arbitration agreement further provides that "[t]he designated arbitrator(s) shall have the authority to award any and all relief that would otherwise be available in a court of law." *Id*. Additionally, the arbitration agreement specifies that it "shall be governed by and interpreted in accordance with the laws of the Commonwealth of Virginia without regard to conflict of law principles." *Id.* In light of the foregoing, I am overruling Respondent's objection to my jurisdiction to consider the request for emergency relief.

Second, as to the existence of a stay of arbitration, Respondent asserts that because it has elected to avail itself of the California State Bar's statutory dispute resolution procedures for attorney's fees disputes, this arbitration is automatically stayed pursuant to Cal. Bus. & Prof. Code §6201(b) and Cal. State Bar. R. 3.511. Claimant argues that the arbitration is not stayed. Cal. Bus. & Prof. Code §6201(b) provides that a stay may be obtained where "the dispute is not one to which subdivision (b) of Section 6200 applies." Section 6200(b)(1), in turn, provides, among other things, that statutory arbitration does not apply to "Disputes where a licensee of the State Bar of California is also admitted to practice in another jurisdiction or where an attorney is only admitted to practice in another jurisdiction, and the attorney maintains no office in the State of California, and no material portion of the services were rendered in the State of California." Likewise, Cal. State Bar. R. 3.511 provides for a stay but R 3.503 excludes "claims for fees where services were not rendered in California in any material part by an attorney who maintains no office in California, whether the attorney is admitted in California or only in another jurisdiction." Claimant asserts, and the engagement letters and supplemental declarations support, that Claimant was providing a material portion

6

of the services in Virginia by attorneys who were not licensed in California from its offices outside of California.

Respondent asserts in its April 2 submission that Claimant's position that a material portion of the legal services were not performed in California "blinks reality" and cites to the following in support:

> • Kytch and its principals resided in California at the outset of Clare Locke's representation, and this continued for a "material portion" of their relationship.
>
> • When Clare Locke was retained, Kytch's principal place of business was in Alameda County, California, until shortly before the company ceased operations.
>
> • Clare Locke filed oppositions to the defendants' motions to quash on jurisdictional grounds, explaining that the nucleus of operative facts that support Kytch's claims occurred in the State of California.
>
> • When Clare Locke served as lead counsel, only one hearing was conducted outside the state of California, and 40% of depositions in the litigations were conducted in the state of California.
>
> • Clare Locke hired at least one California-based expert witness.
>
> • Each of the defendants are represented by California-based lawyers, and practically every letter related to the Alameda County litigation was sent to California.

While these facts and others do suggest (and Claimant acknowledges) that some services were provided in California, the test is not whether some services were provided in California or whether Kytch and its principals resided in California for a "material portion" of their relationship with Claimant. The test is whether a "material portion of the services were rendered in the State of California." As to that question, Claimant has demonstrated, and Respondent has not adequately rebutted on this record, that no

7

material portion of the services were performed in California. Accordingly, I find Respondent's position regarding a stay of this arbitration to be unconvincing and unsupported.[3]

Third, as to the merits, under Rule 38(e) of the AAA Commercial Arbitration Rules, an Emergency Arbitrator may grant a motion for emergency relief if: (1) "the party seeking the emergency relief has shown that immediate and irreparable loss or damage shall result in the absence of emergency relief," and (2) "such party is entitled to such relief." Moreover, "[t]he arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods." AAA Commercial R. 37(a). As to Virginia law, in *May v. R.A. Yancey Lumber Corp.*, 822 S.E.2d 358 (2019), the Virginia Supreme Court noted:

> In general, a court may not grant injunctive relief unless a party has shown that party would suffer irreparable harm without the injunction, and that the party has no adequate remedy at law. *Wright v. Castles*, 232 Va. 218, 224 (1986). Granting or denying a temporary injunction is a discretionary act arising from a court's equitable powers. *Manchester Cotton Mills v. Town of Manchester*, 66 Va. 825, 827 (1875). A temporary injunction allows a court to preserve the status quo between the parties while litigation is ongoing. *Iron City Sav. Bank v. Isaacsen*, 158 Va. 609, 625 (1932). "No temporary injunction shall be awarded unless the court shall be satisfied of the plaintiff's equity." Code § 8.01-628.

Here, Claimant submits that it will suffer irreparable harm in the absence of immediate relief because Respondent is allegedly defunct, has no material assets, and may pay out some or all available settlement proceeds (or have them attached or taken

---

[3] Claimant also asserts that the California mandatory fee arbitration statute is preempted. And I note that the statute does not apply to disputes alleging malpractice or professional misconduct. Respondent's letter to Claimant terminating its representation could be read as asserting professional misconduct, however, I need not make any findings regarding preemption or a secondary potential exclusion given my finding regarding the exclusion for non-California attorneys.

8

by other creditors) prior to resolving Claimant's attorneys' lien and related claims. It has also submitted engagement letters, invoices and declarations attesting to the nature and value of the services performed on behalf of Respondent. It therefore appears on the current record that Claimant has stated a *prima facie* claim for relief and demonstrated a likelihood of success on its claim for *some* monetary award.[4]

While the terms of the draft settlements of the Kytch Litigation have not been disclosed, there does not appear to be any dispute that settlements are in the works, that settlement proceeds will be available to Respondent under the settlements or that Respondent has not yet agreed to or submitted a stipulated order in the Kytch Litigation agreeing not to disburse any settlement funds.[5] Accordingly, there is a risk that Claimant will suffer irreparable harm absent injunctive relief.[6]

At the same time, however, it appears that the request for emergency relief -- which seeks to enjoin dismissal of the Kytch Litigation and freeze all settlement funds until this arbitration is resolved -- may be broader than necessary to protect Claimant. The record shows that Claimant offered, and Respondent initially agreed, to resolve the need for emergency relief through a standstill agreement pursuant to which Respondent would agree not to disburse settlement proceeds for a limited period of time. (Ex. J.) Under that proposed agreement, the restraint would not be in place for a potentially

---

[4] To be clear, I am not making any finding that Claimant *will* succeed at a hearing after full discovery in proving its claim for the attorneys' fees it seeks or that Respondent *will not* be able to prove a defense that Claimant is owed nothing, less than it seeks, or owes some amount to Respondent under one or more counterclaims. At this time, on a limited factual record and in the context of an expedited request for emergency relief, it is not possible or appropriate to make such findings.

[5] Respondent's counsel suggests in his April 2 letter that settlement funds would be available to be held in escrow and he confirmed that at the hearing.

[6] Respondent argues that there is no irreparable harm because it agreed to Claimant's proposal to escrow settlement funds, however, the parties have not agreed to an escrow arrangement and Respondent has not stipulated in the Kytch Litigation to escrow funds.

extended period of time -- until Claimants' attorneys' lien and related claims have been finally resolved. Rather, the proposed agreement would freeze funds for 45 days after receipt of all Settlement Documents. According to Claimant, its proposal would "maintain the status quo, allow the parties to the Kytch litigation to resolve their settlement with minimal distraction, minimize litigation costs, and impose no burden on Kytch. If we are not able to come to an agreement before the end of the 45-day period, then Kytch and Clare Locke can litigate/arbitrate that issue as appropriate." (*Id.*) It appears the deal fell apart over a disagreement regarding a stipulated order memorializing the agreement. Nevertheless, inasmuch as Respondent agreed at one point (and again at the hearing) to Claimant's proposal to temporarily freeze settlement funds, it appears Respondent will not be prejudiced by an Order formalizing a temporary restraint and it likewise appears Claimant will be adequately protected by a more limited restraint than sought in its emergency application.

Accordingly, I am issuing an order:

(i) directing Kytch to immediately provide Claimant with the Settlement Documents and, if not yet final, drafts or term sheets describing the material terms of the agreements;

(ii) directing Claimant and its counsel to keep the Settlement Documents confidential and use them only as needed to resolve Claimant's disputes with Kytch and related actors; and

(iii) preliminarily enjoining Kytch and its officers, agents, servants, employees, attorneys, and other persons in active concert or participation with them from dismissing any of the cases in the Kytch Litigation and/or dispersing, encumbering, and/or

10

dissipating any settlement funds received in the Alameda County Action, the Delaware Action or the Northern District of California Action from the date of this Decision and Order up to and until 45 days following Claimant's receipt of the last of the Settlement Documents along with a certification under penalty of perjury from an officer of Kytch that all such documents in their complete, final form have been provided.[7]

(iv) awarding all costs associated with the application for emergency relief (including arbitration and arbitrator fees) in Claimant's favor and against Respondent.

Dated: April 2, 2024

*[signature]*

Howard Schub, Emergency Arbitrator

---

[7] This is without prejudice to the right of Claimant to seek or for Respondent to oppose an extension of the injunction if the parties cannot resolve the dispute within the time frame set forth above.