# Exhibit "2"

```
                    UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA


   CLARE LOCKE LLP,                   :
                                      :
                                      :   Civil Action
               Petitioner,            :   No. 1:24-cv-00545-PTG-WBP
                                      :
        v.                            :
                                      :   May Date4, 2024
   KYTCH, INC.,                       :   10:00 a.m.
                                      :
                                      :
                                      :
               Respondent.            :
                                      :
   ...........................        :


             TRANSCRIPT OF MOTION HEARING PROCEEDINGS
         BEFORE THE HONORABLE PATRICIA TOLLIVER GILES,
              UNITED STATES DISTRICT COURT JUDGE

 APPEARANCES:

   For the Plaintiff:          Cecil Bryan Wilson, Esq.
                               Williams & Connolly
                               680 Maine Avenue, SW
                               Washington, DC 20024
                               202-434-5428
                               Fax: 202-434-5029
                               Email: Cwilson@wc.com

                               William Travers Burke, Esq.
                               Williams & Connolly LLP
                               680 Maine Avenue, SW
                               Washington, DC 20024
                               202-434-5299
                               Email: Wburke@wc.com

   For the Defendant:          Daniel Paul Watkins, Esq.
                               Meier Watkins Phillips Pusch LLP
                               919 18th Street, NW
                               Suite 650
                               Washington, DC 20006
                               804-426-9454
                               Email: Daniel.watkins@mwpp.com
```

```
APPEARANCES:   (Cont.)

Court Reporter:                 Scott L. Wallace, RDR, RMR, CRR
                                Official Court Reporter
                                United States District Court
                                401 Courthouse Square
                                Alexandria, VA 22314-5798
                                Cell: 443-584-6558
                                Email: Scottwallace.edva@gmail.com
```

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

**MORNING SESSION, MAY 14, 2024**

(9:58 a.m.)

THE COURTROOM CLERK: Court calls *Clare Locke LLP versus Kytch, Inc.,* Case Number 1:24-cv-545.

May we have appearances, please, first for the petitioner?

MR. WILSON: Good morning. Bryan Wilson for the petitioner, Clare Locke, LLP. With me is my partner William Burke.

THE COURT: Good morning to both of you.

MR. BURKE: Good morning.

MR. WATKINS: Good morning. Daniel P. Watkins on behalf of respondent, Kytch, Inc.

THE COURT: And good morning to you. And so I see -- Mr. Wilson, you'll be arguing this morning?

MR. WILSON: Yes, Your Honor.

THE COURT: So I'll hear from you first.

MR. WILSON: Thank you. Good morning, Your Honor. May it please the Court. We are here seeking confirmation of an interim arbitration award that provided injunctive relief to the petitioner, Clare Locke, LLP.

The underlying arbitration is a dispute between the law firm, Clare Locke, and its former client, Respondent Kytch, Inc. The emergency award we are seeking to confirm was issued by an emergency arbitrator under the American Arbitration Association's commercial rules.

*1*      In the emergency award, the arbitrator found that Clare
*2* Locke had shown a likelihood of success on the merits of its
*3* quantum meruit claim against Kytch for the significant time and
*4* resources that Clare Locke devoted to its work for Kytch, more
*5* than $10,000 of attorney time worth more than $7 million in fees.
*6*      The arbitrator also found that Kytch had minimal assets
*7* and risked depriving Clare Locke of any means of recovery if
*8* Kytch was not enjoined, and that's the real reason we are here
*9* and why we sought emergency injunctive relief.
*10*      The emergency award maintains a status quo by preventing
*11* Kytch from settling out from under Clare Locke's valid attorneys
*12* liens or dissipating any proceeds from those cases until Clare
*13* Locke's arbitration claims have been resolved.
*14*      Kytch in its response does not raise any cognizable basis
*15* for vacating the emergency award under the Federal Arbitration
*16* Act, but notably Kytch does argue for vacatur in several
*17* respects.  The arguments for vacating the emergency award
*18* conflict with what we viewed as Kytch's closest to relevant
*19* argument, which was disputing that the Court could confirm the
*20* emergency award because it was not final.
*21*      If Kytch is arguing for vacatur, then the award is
*22* sufficiently final to confirm it.  So those arguments really run
*23* into one another.
*24*      As we pointed out in our papers, courts have considered
*25* the rule about finality in this exact circumstance, when you've

1  got an emergency injunctive award entered by an arbitration
2  panel, and consistently the courts say we can and should confirm
3  those awards to make them valid.  There's nothing in Section 9 of
4  the FAA that requires finality.
5          THE COURT:  I agree with you on that point, so you can
6  move on.
7          MR. WILSON:  Excellent.
8          THE COURT:  And in terms of my review of this, it's very
9  narrow, is it not?
10         MR. WILSON:  Absolutely, Your Honor.
11         THE COURT:  And limited.
12         MR. WILSON:  And really, when we get to the arguments
13 against confirmation, there's almost nothing there.  They say
14 that the arbitrator exceeded his powers by reaching beyond Kytch.
15 The award really tracks Federal Rule of Civil Procedure 65.  It's
16 just like a preliminary injunction, so it enjoins Kytch and the
17 parties.  It controls like its agents.  There's no excess of
18 power there.  The *Arrowhead Global Solutions* case out of the
19 Fourth Circuit, it's unpublished, but we cited it in our reply.
20         THE COURT:  And that was -- was that raised below with the
21 arbitrator?
22         MR. WILSON:  The argument that Kytch raised here was not
23 raised in front of the arbitrator, so it was waived as well.  So
24 we don't think there's an excess of powers argument.  So, then,
25 all that's left in Kytch's arguments are really just disputing

1  the merits, right, like the California mediation privilege.  That
2  was raised in connection with the April 12th order by Kytch.  The
3  arbitrator considered it, he rejected it on the merits.  There's
4  no basis for setting aside that decision, even if it was
5  incorrect.
6       And so, really, the bottom line is that Kytch got exactly
7  the arbitration process that it bargained for.  It heard -- the
8  emergency arbitrator considered its arguments orally and in
9  writing, and in this court Kytch simply disagrees with them.  And
10 so, you know, fundamentally, Your Honor, the arbitrator found
11 that Clare Locke does face an imminent risk of irreparable harm,
12 and we are here asking the Court to confirm that award so that
13 that risk does not become a reality, and Clare Locke has the full
14 power of the federal courts behind it.
15      And unless Your Honor has further questions, I will wrap
16 up.
17      THE COURT:  I don't.  Thank you.  Mr. Watkins, I'll hear
18 from you next.
19      MR. WATKINS:  I'm sorry?
20      THE COURT:  I'll hear from you next.
21      MR. WATKINS:  Thank you.  Thank you for your time, Your
22 Honor.  This is something of a peculiar case, primarily because,
23 even before the relevant arbitral awards were handed down, Kytch
24 did agree to the injunctive relief that Clare Locke was seeking.
25 Specifically Kytch agreed not to disburse any settlement funds

*1* within 45 days of settlement and agreed to provide the final
*2* settlement documents when that took place.
*3* There have been other developments in the arbitration that
*4* I won't really get into now, but the High Low is that Kytch has
*5* complied with the aspects of the interim arbitral awards that are
*6* currently -- that are currently relevant and available given the
*7* ripeness issue that we discussed in our papers.
*8* So, I think I'll try to be short on my remarks because we
*9* set forth our position in great detail in our opposition brief,
*10* and I would like to focus on two issues and answer whatever
*11* questions the Court may have.
*12* The first issue relates to our concern that this tribunal
*13* and that this action is being used to publicize confidential
*14* information belonging to Kytch. This was referenced in our --
*15* THE COURT: How is that before me?
*16* MR. WATKINS: I'm sorry?
*17* THE COURT: I said, how is that issue before me?
*18* MR. WATKINS: The issue of Kytch's confidential
*19* information being published on the papers --
*20* THE COURT: -- right --
*21* MR. WATKINS: -- in this court is before you because
*22* you're the judicial officer that --
*23* THE COURT: No, I understand that you have presented the
*24* argument to the Court, but I'm saying, what is my ability to
*25* review that issue of whether or not these documents are now

*1* public or not?  Because this is only before me for enforcing this
*2* emergency relief.  That's what I could provide.
*3*         MR. WATKINS:  I think it's a two-part question.  I'm not
*4* sure if you are talking about -- are you asking about the
*5* mediation privilege?
*6*         THE COURT:  No.  You said that the purpose of or your
*7* concern here is the fact that these, you know -- Kytch's
*8* confidential information has now been made public, and I'm
*9* saying, if this is before me to review the arbitration award,
*10* that's the only thing that is before me.
*11*         MR. WATKINS:  I understand your question, and, Your Honor,
*12* under both Virginia law and the law in this circuit, you do have
*13* the authority to govern the conduct of lawyers before you, and
*14* that threshold issue that I was just discussing relates to a
*15* former lawyer publishing their client confidence's on your
*16* docket.  And so in terms of your authority to review it, I think
*17* it goes to the Court's inherent power to manage its own docket
*18* and --
*19*         THE COURT:  You have filed documents on this public
*20* record.  Some of the documents that they filed were redacted, and
*21* the only thing that was visible was the, I believe, the language
*22* regarding the arbitration.  But you filed them in their entirety,
*23* as well as communications between the client and the attorney,
*24* which went into detail about the representation and also
*25* disclosed some confidential information, did it not?

*1*   MR. WATKINS:  That is correct, Your Honor, and the
*2* confidential -- the confidences belong to the client, and that's
*3* clearly established under rule 1.6, and Kytch's objection goes to
*4* the embarrassing information that was published on this Court's
*5* docket relevant to its supposed inability to pay, its refusal to
*6* pay, and its lack of resources, excuse me.
*7*   THE COURT:  I think --
*8*   MR. WATKINS:  And so the client is -- I'm sorry.  I didn't
*9* mean to cut you off.  I didn't mean to cut you off.
*10*   THE COURT:  I think it would be more helpful if we just
*11* focused on the arbitration award and not get into -- unless you
*12* are asking for something specific in terms of sealing something
*13* or redacting something.  But at this point, it's all out there
*14* anyway and has been filed on both sides.  So I don't know what
*15* kind of relief you would be seeking from this Court.
*16*   MR. WATKINS:  So, given -- I'll address that very briefly
*17* and then move on, consistent with the Court's instruction.
*18*   As we stated in our papers, given that they were provided
*19* to Bloomberg even before Kytch was aware that the filing took
*20* place, sealing appeared to be futile.  What we would ask the
*21* Court, to the extent that any future confirmation or litigation
*22* related to the underlying arbitration appears before Her Honor,
*23* that she advise counsel for claimant, counsel for Clare Locke
*24* here, to avoid future violations of Rule 1.6 related to its
*25* duties to former clients.  But we didn't move to seal because the

*1* cat was, indeed, already out of the bag.

*2*   THE COURT:  If you want to file a separate motion on that
*3* for me to consider that, I will do it at that time.

*4*   MR. WATKINS:  Yes, Your Honor.  So I think the key
*5* remaining issue relates to -- it's twofold.  One is the finality
*6* of the underlying arbitrator's decision, and the second is the
*7* impact that the arbitral awards have on third parties that didn't
*8* agree to arbitrate in the first place.

*9*   I think the issue is -- the second issue that I raised
*10* relevant to impact on third parties is very clear.  McDonald's,
*11* Taylor, TF Group, Jonathan Tyler Gamble -- those are the
*12* defendants in the underlying Kytch litigation -- are not parties
*13* to any arbitration agreement.  And to the extent that the
*14* arbitrator's interim awards putatively bind them or preclude them
*15* from dismissing the Kytch litigations currently pending in
*16* federal court, in the northern district and the Third District --
*17* the Northern District of California in the Third Circuit, or the
*18* state court action, that is beyond the arbitrator's power.

*19*   THE COURT:  But isn't it recognized that sometimes when
*20* the arbitrators are dictating the actions of the parties that it
*21* may have an incidental effect on others, but the award itself
*22* does not speak to the defendants in the California suit?

*23*   MR. WATKINS:  While they are not named -- there are only
*24* two parties, and by that I mean plaintiff and defendant, that
*25* have the power to dismiss the actions, and so the Court is

*1* correct in that McDonald's and the other defendants are not
*2* expressly named, but given that Kytch is the only entity with the
*3* power to dismiss the various Kytch litigations that I discussed,
*4* besides the McDonald's defendants -- we'll refer to them as such
*5* this morning -- then implicitly their conduct is constrained by
*6* the interim arbitral awards.
*7*     THE COURT:  But that's that incidental effect that the
*8* courts have recognized, is it not?
*9*     MR. WATKINS:  I don't believe so, Your Honor, and I'm not
*10* sure which case you're talking about specifically that--
*11*     THE COURT:  *Arrowhead versus Globe*.
*12*     MR. WATKINS:  Sorry.
*13*     THE COURT:  Arrowhead versus that Globe Solutions, Inc.
*14*     MR. WATKINS:  So, in *Arrowhead*, the issue is -- was
*15* related to injunctive relief as it -- as it arose from the
*16* claimant's trade secrets and in the context of a respondent
*17* working in conjunction with another third party, so some type of
*18* conspiracy or that sort of matter, then the respondent being the
*19* primary actor would give the arbitrator, arguably, the authority
*20* to bind their conduct, but that's not what we have here.
*21*     The McDonald's defendants in Kytch are adverse parties
*22* expressly, and they're not acting in concert with anything beyond
*23* attempting to resolve this case.
*24*     THE COURT:  But the award enjoins Kytch and its agents,
*25* attorneys, and other persons in active concert or participation

*1* with them for dismissing any of the civil actions.

*2*     MR. WATKINS:  Yes, Your Honor.

*3*     THE COURT:  Okay.  So that is to Kytch and its agents and
*4* officers, correct?

*5*     MR. WATKINS:  As I said before, Your Honor, other than
*6* Kytch and its lawyer, the only other entity in the world that has
*7* the power to dismiss those actions were the McDonald's
*8* defendants, and so I believe a fair reading of the arbitrator's
*9* award is consistent with what we've argued as it relates to the
*10* arbitrator's inability to constrain third parties.

*11*     THE COURT:  Okay.  I think I understand your argument.

*12*     MR. WATKINS:  And then the final point, beyond what we've
*13* raised in our papers, goes to the finality issue, Your Honor, and
*14* the cases cited here are really going to the issue of whether an
*15* arbitrator has the authority to issue temporary equitable relief
*16* in the nature of a preliminary injunction.  Kytch does not take
*17* the position that arbitrators lack that authority, but what we
*18* have here is an intermediate order that is so preliminary that it
*19* cannot possibly be construed as the preliminary injunctions
*20* present in *Arrowhead* or even *UBS Financial Services* or *South Side*
*21* *Seas*.

*22*     In those cases, particularly -- I think -- excuse me.
*23* *Bowers* was raised in the claimant's reply papers for the
*24* proposition that an interim arbitral award related to the escrow
*25* of certain funds was final enough to be confirmed in the Western

*1*  District of North Carolina, but unlike *Bowers* where the
*2*  underlying real estate dispute gave the arbitrator the authority
*3*  to instruct the respondent to pay a specific percentage of
*4*  specific brokerage fees into escrow that may be paid out if the
*5*  claimant were ultimately successful, that's not what we have
*6*  here.
*7*        What we have here is a total freeze of all potential
*8*  settlement funds.  And I'll remind the Court that no settlement
*9*  whatsoever has yet been reached, but that sort of interim and
*10* intermediate step of freezing all the funds instead of earmarking
*11* a certain portion that is in any way tied to the claimant's
*12* assertion of entitlement is far beyond the pale and is not
*13* contemplated in any of the cases cited in either Clare Locke's
*14* opening brief or their reply brief, and that's evidence that in
*15* the underlying arbitration proceedings the permanent arbitrator
*16* now will have to take additional steps to make final the interim
*17* arbitral awards that are subject to today's proceedings.
*18*        THE COURT:  Thank you.
*19*        MR. WATKINS:  Thank you, Judge.
*20*        THE COURT:  Anything else, Mr. Wilson?
*21*        MR. WILSON:  Just briefly, Your Honor.  On the 1.6 issue,
*22* we agree with the Court.  There is no issue before the Court.
*23* Clare Locke disputes that it violated Rule 1.6 or disclosed
*24* anything that it was not permitted to disclose by the parties'
*25* agreements or the Virginia Rules of Professional Responsibility.

*1*   With respect to the incidental effects on third parties,
*2* the *Arrowhead Global Solutions* case that Your Honor flagged, it
*3* didn't -- the injunction did not involve trade secrets.  In
*4* footnote 1 on page 42 of that decision, the Court quotes the
*5* relevant part of the award, and that --
*6*   THE COURT:  What footnote?
*7*   MR. WILSON:  It's on page 42, footnote 1, and it says,
*8* "Effective upon receipt of this award, Arrowhead is hereby
*9* enjoined from the continued performance of its subcontract with
*10* PSI Systems -- P-S-I -- Systems, Inc. or from otherwise
*11* performing the scope of work identified by DataPath in its
*12* technical and pricing proposal for Annex E by any other party or
*13* by Arrowhead without the consent of DataPath," end quote.
*14*   So, this was a subcontract dispute, and the award actually
*15* enjoined the work.  It went far broader than saying you cannot
*16* dismiss a case.
*17*   And then on page 45 of the decision -- I think that's what
*18* Your Honor was referencing in the Court's question -- the
*19* Court -- the Fourth Circuit says, "This power may, as a practical
*20* matter, have an incidental effect on other parties.  That effect,
*21* however, does not prevent the arbitrators from exercising the
*22* power that they do have to prohibit AGS from profiting from
*23* information proprietary to DataPath."
*24*   So, the concern -- they actually stopped a party from
*25* working under a contract, which necessarily would impact the

*1*  party for whom it was supposed to be working.

*2*      There's a much stronger effect than what we have here,
*3*  which is effectively an anti-suit injunction on Kytch and only
*4*  Kytch, and it includes a date limitation in terms of freezing the
*5*  assets that the parties will work through with the arbitrator.

*6*      So, if the Court reaches this issue -- and, again, there
*7*  was no response to our waiver argument, so we don't think the
*8*  Court needs to, but with respect to the incidental effects on
*9*  third parties, courts, including the Fourth Circuit, have
*10* considered that exact same argument and rejected it.  We think
*11* it's a much milder effect here, so we ask that the Court confirm
*12* the award.

*13*     THE COURT:  Thank you.  So, this matter is before the
*14* Court on Clare Locke LLP's petition and motion to confirm an
*15* emergency interim arbitration award by an emergency arbitrator of
*16* the American Arbitration Association.

*17*     As I stated and I think both sides have acknowledged in
*18* their briefs, the scope of judicial review of an arbitration
*19* award is among the narrowest known at law, and so a court sits
*20* only to determine whether the arbitrator did his job; not whether
*21* he did it well, correctly, reasonably, but simply, rather, you
*22* know, he did it.

*23*     And it is -- the only means by which a Court may vacate or
*24* modify an arbitration award, it's very limited, and it's only if
*25* there is evidence of a manifest disregard for the law.  And to

*1* vacate an award on these grounds, the Court -- the record must
*2* show that the applicable legal principle is clearly defined and
*3* not subject to reasonable debate and the arbitrator refused to
*4* heed that legal principle.  So it requires something beyond just
*5* showing that the arbitrator misconstrued the law.
*6*         And here the respondent has made certain challenges to the
*7* award, and the first one deals with that issue of finality, and
*8* the Fourth Circuit has joined other circuits in recognizing that
*9* arbitrators must have the power to issue temporary, equitable
*10* relief in the form of a preliminary injunction, and that is
*11* essentially what we have here.  And the standard is very similar
*12* to that of, you know, what a court is doing when it issues a
*13* preliminary injunction, and that's looking at whether or not
*14* there's irreparable harm and the likelihood of success on the
*15* merits.
*16*         And here the arbitrator issued the emergency award and
*17* determine both that Clare Locke has demonstrated a likelihood of
*18* success on the merits and that it would suffer irreparable harm.
*19*         And, despite your arguments, this Court can confirm
*20* that -- and I think -- well, actually, you did acknowledge that
*21* the Court has the authority to confirm it, but your claim is that
*22* it's too temporary, and I simply disagree with that.
*23*         I think that it is quite appropriate in a situation when,
*24* if the settlement funds or the disbursement is not enjoined in
*25* this matter, that Clare Locke would be put in a position where

*1*  they cannot recover, and so, therefore, it is appropriate for
*2*  this Court -- for the arbitrator and both this Court to confirm
*3*  that arbitration award on that basis.
*4*       It's also -- as I stated, the Fourth Circuit has
*5*  recognized that at times third parties or parties who are not
*6*  bound by an arbitration agreement may still be incidentally
*7*  affected, but here the emergency award is clear that it's not
*8*  binding the defendants in the underlying or in the action out in
*9*  California, even though this award clearly will impact them, and
*10* so, therefore, it's not a -- that is somewhat anticipated.
*11*      So that's not a basis for this Court to not confirm the
*12* award, and, in fact, also, even though I've addressed the
*13* argument on the merits, it's really waived since it was not
*14* raised below with the arbitrators.
*15*      In terms of the mediation privilege, that is something
*16* that the arbitrator did consider below, because the award or the
*17* supplemental that was issued on April 12th indicated that the
*18* respondent had sought and obtained consents from its adversaries
*19* in the Kytch litigation to share the mediator's proposal with the
*20* claimant.
*21*      Kytch confirmed that the mediation had ended, and the
*22* arbitrator confirmed that Kytch was willing to provide the
*23* mediator's proposal on the condition that claimant maintained the
*24* document in strict confidence, and so there is no clear
*25* indication here that Kytch challenged the arbitrator's ability to

*1*  mandate disclosure of any draft settlement agreement based on the
*2*  mediation privilege.  And Kytch has failed to establish that the
*3*  emergency arbitrator refused to heed a clearly defined legal
*4*  principle applicable to the underlying arbitration proceeding.
*5*       Therefore, you haven't met the standard that this Court
*6*  must establish in order for it to vacate the award, because you
*7*  have to show, one, that it's an applicable legal principle that's
*8*  clearly defined and not subject to reasonable debate and the
*9*  arbitrator refused to heed that legal principle, because clearly
*10* here the arbitrator considered this.
*11*      And although you didn't argue it today, another basis you
*12* set forth was the fact that the award should be vacated as a
*13* manifest disregard of the Virginia's charging lien statute.
*14* Whether or not Clare Locke may properly assert a lien claim under
*15* the Virginia lien statute is a merits issue that is not presently
*16* before this Court, and so that is not a basis for the Court to
*17* vacate or to modify the award.
*18*      And so, for all of these reasons, the Court is going to
*19* grant petitioner's petition to confirm the emergency arbitration
*20* award.  Your exceptions are preserved.  Is there anything
*21* further?
*22*      MR. WILSON:  No, Your Honor.  Thank you.
*23*      MR. WATKINS:  I would just like to apologize, Your Honor.
*24* I didn't mean to speak over you when you were asking me
*25* questions.

*1*   THE COURT: No need to apologize.

*2*   MR. WATKINS: Thank you, Your Honor.

*3*   THE COURT: No problem. In the heat of argument from

*4* counsel, sometimes that happens, and so no offense was taken.

*5*   MR. WATKINS: Thank you, Judge.

*6*   THE COURT: Thank you. We are in recess.

*7*   (Proceedings adjourned at 10:27 a.m.)

### **C E R T I F I C A T E**

I, Scott L. Wallace, RDR-CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-entitled matter.

```
/s/ Scott L. Wallace                    5/14/24
-----------------------------           ----------------
Scott L. Wallace, RDR, CRR              Date
   Official Court Reporter
```